# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* HARTFIELD, Minors.

UNPUBLISHED
April 18, 2017

No. 334076
Oakland Circuit Court
Family Division
LC No. 2014-820197-NA

Before: SAWYER, P.J., and SAAD and RIORDAN, JJ.

PER CURIAM.

Respondent father appeals as of right the trial court's order terminating his parental rights to the minor children, TH, MH, SH, and DH, pursuant to MCL 712A.19b(3)(b)(*i*) and (j). Because we find no errors warranting relief, we affirm.

Respondent and the mother of his four children divorced in 2007. The relationship between respondent and his ex-wife was contentious and they were incapable of amicably coparenting their children. In the years following the divorce, physical custody of the children fluctuated. Eventually, by September 2011, respondent had sole physical custody of the children. In the fall of 2012, respondent moved to Georgia with his children and his third wife. Shortly after this move, respondent was arrested, extradited to Michigan, and charged with several counts of criminal sexual conduct. These charges arose out of allegations that respondent inappropriately touched a friend's two teenaged daughters. Respondent was convicted of second-degree criminal sexual conduct (CSC II) and two counts of fourth-degree criminal sexual conduct (CSC IV). In June 2013, he was sentenced to concurrent prison terms of 2 to 15 years for the CSC II conviction, and two years for each CSC IV conviction. Approximately nine months after respondent's incarceration, his daughter MH disclosed to her mother that respondent had touched her inappropriately in May 2010. These allegations were reported to Children's Protective Services (CPS) and a petition was filed in May 2014 seeking termination of respondent's parental rights at the initial disposition. During the lengthy termination hearing, all four of the children recounted acts of physical abuse by respondent under the guise of discipline. At the conclusion of the termination hearing, the trial court did not find credible MH's allegations of inappropriate sexual touching, but did find wholly credible the allegations that respondent had physically abused the children for several years. Consequently, the court terminated respondent's parental rights pursuant to MCL 712A.19b(3)(b)(*i*) and (j).

Respondent first argues that the trial court erred when it found that the statutory grounds for termination were established by clear and convincing evidence. We disagree. To terminate

-1-

parental rights, the trial court must find that at least one statutory ground for termination has been established by clear and convincing evidence. *In re Trejo,* 462 Mich 341, 355; 612 NW2d 407 (2000). This Court reviews the trial court's findings under the clearly erroneous standard. MCR 3.977(K). A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been committed. *In re Miller,* 433 Mich 331, 337; 445 NW2d 161 (1989).

Respondent's parental rights were terminated pursuant to MCL 712A.19b(3)(b)(*i*) and (j). These statutory provisions permit termination of parental rights when the following conditions are satisfied:

> (b)   The child or sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

> (*i*)  The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

> * * *

> (j)   There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

After reviewing the record, we conclude that the trial court did not clearly err when it found that these statutory grounds for termination were established by clear and convincing evidence.

All of the children consistently testified that while they were in respondent's care, respondent frequently physically disciplined them with a belt. The "discipline" was meted out for failing to complete chores, borrowing somebody else's bike, breaking respondent's rules, or for other perceived misbehavior. In fact, if after a "whooping" a child would cry and ask for their mother, that child would be brought back to the bedroom for additional punishment. All of the children consistently related that when the "whoopings" occurred, respondent followed the same pattern: he would call them up to a bedroom, make them lie on the bed, then whoop them until he felt that he had gotten his point across. The whoopings occurred with a fair amount of regularity and they frequently left marks, welts, and bruises on the children's thighs and buttocks. TH suffered welts that lasted a couple of days. DH was "whooped" so hard on the buttocks he could not sit down for several days; on another occasion, he could sit after the "whooping," but it was very painful. The children similarly recounted that respondent would rise up on his toes when he brought the belt down on their backsides and, on at least one occasion, he brought the belt down and around so high and hard that he struck the ceiling fan. Respondent would make the siblings watch each other as he disciplined them with the belt. During the whoopings, respondent made the children put their hands over their heads. They were not allowed to put their hands at their sides during a whooping because then they might be able to block the belt. The children had become so accustomed to the "whoopings" that they thought they were normal behavior. We agree with the trial court's assessment that the detail and similarity in the children's descriptions of the events significantly enhanced their credibility.

-2-

Moreover, the children's testimony clearly and convincingly established that respondent physically abused the children.

There was also clear and convincing evidence that the children would suffer harm and further abuse if placed in respondent's care. Respondent readily acknowledged that in 2007, he was advised by CPS to cease using a belt to physically discipline his children. Despite this admonishment, respondent clearly continued to abuse the children until his incarceration in the fall of 2012. Further, the clinical psychologist testified that when it came to his children, respondent was unable to abide by boundaries and constraints imposed on him.

Considering the foregoing evidence, the trial court did not clearly err when it found grounds to terminate respondent's parental rights pursuant to MCL 712A.19b(3)(*i*) and (j). There was clear and convincing evidence that respondent physically abused the children and that they would suffer further harm and abuse if placed in respondent's care.

Next, respondent challenges the trial court's finding that termination of his parental rights was in the children's best interests. We find no merit to this challenge. "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of the parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). The court may consider several factors when deciding if termination of parental rights is in a child's best interests, including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts,* 297 Mich App 35, 40; 823 NW2d 144 (2012). The court may also consider psychological evaluations, the child's age, continued involvement in domestic violence, and a parent's history. *In re Jones*, 286 Mich App 126, 129; 777 NW2d 728 (2009).

The trial court did not clearly err when it found that termination of parental rights was in the children's best interests. The evidence presented at the termination hearing demonstrated that respondent frequently physically abused all four of his children and this abuse started at a very young age. Respondent did not take any responsibility for his behavior, specifically, he denied abusing his children with a belt. Respondent asserted that the children's testimony was untruthful and the product of the vindictive and coercive efforts of his ex-wife and the maternal grandmother. On appeal, respondent continues to minimize his behavior by asserting that the children were simply spanked with a belt as a manner of discipline, that he disciplined with a belt because that was how he was raised, and that he never acted without justification. Even now, respondent fails to show any insight into the severity in which he meted out the "discipline."

Further, respondent's reliance on the alleged bonds he forged with his children is misplaced. It is clear that any bond that might have existed was destroyed by his actions. All of the children in some manner feared respondent. Each one testified that they did not want to have any contact with respondent. Three of the four children clearly articulated a desire that respondent's parental rights be terminated. Thus, there is little support for the assertion that a strong bond existed between respondent and his children. In any event, even if a tenuous bond continued to survive, that bond was clearly outweighed by the need to protect the children from the abuse respondent inflicted on them. The children deserved to be in a safe environment.

The clinical psychologist noted that the relationships in this family were significantly fractured and that all of the children had shown signs of being traumatized. The therapist opined that all of the children were in need of therapy and that the children would heal more quickly if respondent were not involved in their lives.

The foregoing evidence demonstrates that the trial court did not clearly err when it concluded that termination of respondent's parental rights was in the children's best interests.

Respondent further argues that termination of his parental rights was unwarranted because the children were placed in their mother's custody. Generally, a child's placement with a relative weighs against termination and is "an explicit factor to consider in determining whether termination [is] in [a child's] best interests." *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010), citing MCL 712A.19a(6)(a); see also *In re Olive/Metts*, 297 Mich App at 43. If the court fails to explicitly address placement with a relative, the record is inadequate to make a best-interest determination, and reversal is required. *Id.* However, a child's parent is not a "relative" for purposes of MCL 712A.19a. "Relative" is defined in MCL 712A.13a(1)(j) as

> an individual who is at least 18 years of age and related to the child by blood, marriage, or adoption, as grandparent, great-grandparent, great-great-grandparent, aunt or uncle, great-aunt or great-uncle, great-great-aunt or great-great-uncle, sibling, stepsibling, nephew or niece, first cousin or first cousin once removed, and the spouse of any of the above, even after the marriage has ended by death or divorce.

Therefore, as the trial court correctly acknowledged, it did not need to explicitly consider the children's placement with their mother as a factor militating against termination of respondent's parental rights.

Finally, respondent argues that the trial court's decision was premature and he should have been given an opportunity to participate in a treatment plan and work toward reunification. We disagree. Services are not required in all situations. *In re Terry,* 240 Mich App 14, 26 n 4; 610 NW2d 563 (2000). Specifically, where petitioner requests termination in the initial petition there is no need to develop a case service plan because the permanency plan is termination, not reunification. *In re HRC*, 286 Mich App 444, 463; 781 NW2d 105 (2009). In any event, the clinical psychologist opined that because respondent failed to admit any culpability or need for treatment, it was unlikely that he would accept or benefit from any services offered.

Affirmed.

/s/ David H. Sawyer
/s/ Henry William Saad
/s/ Michael J. Riordan

-4-